IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JAMES C. WETHERBE, PH.D          §
                                 §
VS.                              §   CIVIL ACTION NO. 5:15-CV-119-Y
                                 §
TEXAS TECH UNIVERSITY SYSTEM,    §
et al.                           §

<u>**MEMORANDUM OPINION AND ORDER**</u>

Pending before the Court is the Second Motion to Dismiss (doc. 15) filed by defendants Texas Tech University System ("TTU") and Lance Nail, Ph.D ("Nail") (collectively "Defendants"). After review of the amended complaint, the motion, the related briefs, the evidence highlighted therein, and the applicable law, the Court concludes that the motion should be and hereby is GRANTED.

<u>**I.  FACTUAL BACKGROUND**</u>

The present lawsuit is similar to a previous lawsuit[1] plaintiff James C. Wetherbe, Ph.D ("Wetherbe"), filed against Bob Smith, Ph.D ("Smith"), and Lawrence Schovanec, Ph.D ("Schovanec"). In the original lawsuit, Wetherbe sued Smith, TTU's provost, and Schovanec,[2] TTU's president, for their alleged retaliation against Wetherbe in violation of the First Amendment on account of Wetherbe's speech about

---

[1]*See Wetherbe v. Smith*, 593 F.App'x 323 (5th Cir. 2014), *cert. denied*, 135 S.Ct. 2386 (June 1, 2015); *see also* Wetherbe v. Smith, No. 5:12-CV-218-A (N.D. Tex. Dec. 4, 2012).

[2]The original complaint was filed against Guy Bailey, Ph.D, the former president of TTU. Schovanec was later substituted for Bailey as a defendant when Schovanec became the interim president.

tenure. Like the present case, the original lawsuit alleged retaliation in violation of the First Amendment and sought injunctive and declaratory relief. The present lawsuit differs from the original lawsuit, however, because in this case Wetherbe names as defendants TTU and Nail, who is now the dean of TTU's Rawls College of Business. Nail was chosen to fill the dean position that Wetherbe applied for after he resigned from the dean search committee. In the original lawsuit, Wetherbe claimed that, in violation of the First Amendment, he was denied the Horn Professor nomination, denied the Deanship of the Rawls College of Business, and removed from his position as Associate Dean for Outreach because of his speech against tenure. (*See Wetherbe*, No. 5:12-CV-218-A, Pl. 3d. Am. Compl. (doc. 51) 20-31.) In the present lawsuit, Wetherbe alleges that he has suffered additional adverse employment actions since the filing of his first lawsuit in retaliation for his outside speech against tenure and the filing of the original lawsuit. Wetherbe uses the following chart to demonstrate his post-lawsuit protected speech and the alleged retaliation Defendants took against him:

| Protected Speech | | TTU's Retaliatory Acts | |
|---|---|---|---|
| Date Published | Articles Published | Date of Retaliation | Form of Retaliation against Wetherbe |
| Dec. 7, 2012<br>Dec. 12, 2012<br>Dec. 13, 2012<br>Dec. 27, 2012<br>Dec. 28, 2012 | Wall Street Journal, Ex. 10;<br>Insider Higher Ed, Ex. 9;<br>Huffington Post, Ex. 8;<br>Texas Tribune, Ex. 10;<br>Bloomberg, Ex. 7 | Jan. 2013 | Denied access to Mercer Scholarship Fund data |
| Mar. 13, 2013 | Harvard Business Review, Ex. 6 | May. 14, 2013 | Fired from Associate Dean position, Chief Executive Roundtable, Leadership Council, Email from Nail, Ex. 34 |
| May 22, 2013 | Wall Street Journal, Ex. 5. | June 4, 2013 | Removed from MBA course, Sexual Harassment rumor |
| July 14, 2013 | Financial Times, Ex. 4. | Aug. 5, 2013 | Nail comment  to Wetherbe: "no more emails, I don't want to be in the WSJ |
| | | Aug. 20, 2013 | Replaced as advisor for MBA student association |
| Sept./Oct. 2013 | BizEd, Ex. 3 | Sept. 30, 2013 | Revoked  Emeritus Status for Dean's Advisory Council |
| | | Dec. 19, 2013 | Nail's unsupported accusations, Nail freezes Best Buy grant |
| | | Jan. 2014 | Stephenson Chair to be taken away |

| | | Jan. 2015 | No travel reimbursement for New Mexico State trip |
|---|---|---|---|
| | | Mar. 2015 | Demotion to Professor of Practice for teaching load purposes |

(*Id*. at 21-22.) In response to Wetherbe's claims, Defendants seek dismissal. Defendants contend that the Court lacks jurisdiction over Wetherbe's claims against TTU because of Eleventh Amendment immunity. They also seek dismissal for failure to state a claim for relief, alleging that Wetherbe has failed to adequately state any First Amendment claims.

## II.  Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal where the Court lacks subject-matter jurisdiction.  "Federal courts are courts of limited jurisdiction" and, as a result, "the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 253 F.3d 912, 916 (5th Cir. 2001). "A case is properly dismissed for subject-matter jurisdiction when the Court lacks statutory or constitutional power to adjudicate the case." *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014)(quoting *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005)). A district court "has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases:  (1) the complaint alone; (2) the complaint supplemented by

undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).  The first two methods are considered facial attacks on the complaint's allegations of jurisdiction, in which case all factual allegations in the complaint are taken as true.  *See Chatham Condominium Assocs. v. Century Village, Inc.,* 597 F.2d 1002, 1012 (5th Cir. 1979).  The later method is considered a factual attack, which "challenges the existence of subject-matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." *Menchaca v. Chrysler Credit Corp.*, 613 F.3d 507, 511 (5th Cir. 1980). "In general, where subject-matter jurisdiction is being challenged, the trial court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has power to hear the case." *Smith*, 756 F.3d at 347 (quoting *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004)).

TTU challenges this Court's subject-matter jurisdiction under Rule 12(b)(1) and the Eleventh Amendment. (Defs.' Br. Supp. Mot. Dismiss (doc. 16) 10.)[3]  TTU and Nail have also asserted that dismissal is appropriate under Rule 12(b)(6). (Defs.' Br. at 4-15.)

---

[3]Nail asserts qualified immunity as a defense to claims made against him in his individual capacity. Because Wetherbe has failed to allege a violation of a constitutional right, he cannot overcome Nail's qualified-immunity defense. *See Wetherbe*, 593 F.App'x at 326 (citation omitted).

Because TTU has filed a Rule 12(b)(1) motion in conjunction with another Rule 12 motion, "the Court should consider the jurisdictional attack before addressing any attacks on the merits." *Wolcott v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011)(citation omitted).

Eleventh Amendment immunity operates as a jurisdictional bar, depriving federal courts of power to adjudicate suits against a state. *Union Pac. R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011)(citations omitted). "The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States, and by its own citizens as well." *Id.* (citing *Lapides v. Bd. of Regents*, 535 U.S. 613, 616 (2002)). This "[s]overeign immunity extends to agencies of the state government and 'alter egos' or 'arms of the state.'" *Kermode v. Univ. of Miss. Med. Ctr.*, 496 F.App'x 483, 487(5th Cir. 2012)(citations omitted). "[I]nstitutions of higher education ... are considered arms of the state entitled to sovereign immunity." *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 360 (2006). Further, Eleventh Amendment immunity extends to state officials sued in their official capacities. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."). Nail, in his official capacity, is employed as a dean at TTU, which is a state institution of higher learning. As such, Nail, in that capacity and TTU are entitled to Eleventh Amendment immunity absent an applicable

exception.

There are three exceptions to Eleventh Amendment immunity: (1) a valid abrogation of the state's immunity by Congress; (2) waiver or consent to suit by the state; or (3) the state's amenability to suit under the *Ex Parte Young* Doctrine. *See Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44 (1996). The Court will address each in turn.

In order to abrogate a state's immunity, Congress must have "unequivocally expressed its intent to abrogate the immunity" and acted "pursuant to a valid exercise of power." *Id*. at 55 (citation omitted). Congress's intent to abrogate "must be obvious from a clear legislative statement." *Id*. Congress has not unequivocally expressed its intent to abrogate a state's Eleventh Amendment immunity from suit under 42 U.S.C. § 1983. *See Quern v. Jordan*, 440 U.S. 332, 337-38 (1979)(discussing *Edelman v. Jordan*, 415 U.S. 651 (1974)). "[A] general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment." *Seminole Tribe of Fla.*, 517 U.S. at 56 (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 246 (1985). "The fact that Congress grants jurisdiction to hear a claim does not suffice to show Congress has abrogated all defenses to that claim." *Id*. (citation omitted). Consequently, the abrogation exception to Eleventh Amendment immunity does not apply in the present case.

The second exception is waiver or consent by the state. The Court must employ a strict standard to determine whether a state has

waived that immunity. *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305 (1990).  The Court will give effect to a state's waiver of Eleventh Amendment immunity "only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." *Id.* (quoting *Atascadero State Hosp.*, 473 U.S. at 239–40).  A state does not waive its immunity by consenting to suit only in its own courts, and "[t]hus, in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in federal court." *Id.* (internal quotation marks and citations omitted). Wetherbe makes no argument that TTU has waived or consented to suit. Accordingly, the waiver or consent exception to the state's immunity does not apply in the present case.

The third exception to Eleventh Amendment immunity is the *Ex Parte Young* doctrine.  Under this doctrine, a plaintiff may overcome the Eleventh Amendment's jurisdictional bar and bring suit against a state agency or official where the suit seeks prospective injunctive relief in order to end a continuing violation of federal law. *Seminole Tribe of Fla.*, 517 U.S. at 73.  In Wetherbe's first amended complaint, he states that because of violations of the First and Fourteenth Amendments, Wetherbe is entitled to prospective injunctive relief to prevent further constitutional violations. (Pl.'s Am. Compl. (doc. 11) 32, ¶ 112.)  Accordingly, the Court must now determine whether

Wetherbe has stated a claim for relief for retaliation in violation of the First Amendment.

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted." This rule must, however, be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court. Rule 8(a) calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (holding Rule 8(a)'s simplified pleading standard applies to most civil actions). As a result, "[a] motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105 (1983) (quoting Wright & Miller, *Federal Practice and Procedure* § 1357 (1969)). The Court must accept as true all well-pleaded, non-conclusory allegations in the complaint and liberally construe the complaint in favor of the plaintiff. *Kaiser Aluminum*, 677 F.2d at 1050.

The plaintiff must, however, plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). Indeed, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and his "factual allegations must be enough to raise

a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 & 1974 (2007).   The Court need not credit bare conclusory allegations or "a formulaic recitation of the elements of a cause of action." *Id.* at 1955.   Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

In considering a motion to dismiss for failure to state a claim, "courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996).   Documents attached to or incorporated in the complaint are considered part of the plaintiff's pleading.   *See* FED. R. CIV. P. 10(c); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000); *Paulemon v. Tobin*, 30 F.3d 307, 308-09 (2nd Cir. 1994); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990).

In Wetherbe's first amended complaint (doc. 11), he alleges that Defendants have "retaliated against [him] for exercising his right to free speech ... guaranteed by the First Amendment ... in violation of 42 U.S.C. § 1983," which is applicable to the states through the Fourteenth Amendment. In order to state a claim for relief under §

1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988)(citations omitted).   Accordingly, the Court must determine if Wetherbe has stated a claim for relief for First Amendment retaliation under § 1983.

## III. First Amendment Retaliation

The Supreme Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment. *Garcetti v. Ceballos,* 547 U.S. 410, 417 (2006)(citation omitted).   Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern. *Id*. (citations omitted). In order to sufficiently establish a First Amendment claim under § 1983 based on retaliation due to engaging in free speech, "a public employee must show that (1) [he] suffered an adverse employment action; (2) [his] speech involved a matter of public concern; (3) [his] interest in commenting on matters of public concern outweighed the defendant's interest in promoting workplace efficiency; and (4) [his] speech was a substantial or motivating factor in the defendant's adverse employment action." *Burnside v. Kaelin*, 773 F.3d 624, 626 (5th Cir. 2014)(citing *DePree v. Saunders*, 588 F.3d 282, 286–87 (5th Cir.2009)); *Click v. Copeland*, 970 F.2d 106, 113 (5th Cir.1992); *see also West*,

487 U.S. at 48 (stating that a plaintiff must also show that the alleged constitutional deprivation was committed by a person acting under color of law).   Taken as true, Wetherbe's allegations sufficiently posit that he suffered an adverse employment action.[4] Therefore, the Court must now determine whether Wetherbe's speech is constitutionally protected.

There are two inquiries that guide interpretation of the constitutional protections accorded to a public employee's speech. *Garcetti*, 547 U.S. at 418(citing *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.*, 391 U.S. 563, 568 (1968)).   The first inquiry is to determine "whether the employee spoke as a citizen on a matter of public concern." *Id*. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. *Id*. (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983). If the answer is yes, then a potential First Amendment claim arises. *Id*. The question then becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public. *Id*. (citing *Pickering*, 391 U.S. at 568).   Thus, the Court must determine whether Wetherbe has spoken as a private citizen on a matter of public concern.

In Wetherbe's original lawsuit, Wetherbe alleged a First Amendment retaliation claim when he was denied the Horn Professorship,

---

[4]See alleged "Retaliatory Acts" chart, *supra*.

the Deanship of the Rawls College of Business, and removed from the position of Associate Dean for Outreach.  Wetherbe claimed that an official of TTU retaliated against him because of his speech on tenure that he expressed to TTU during the interview process for the Deanship.  In that case, the United States Court of Appeals for the Fifth Circuit noted that Wetherbe's allegedly protected speech fell into two categories: (1) "public speeches and consulting work covering the issue of tenure," and (2) "speech while applying to be a dean and a Horn Professor." *Wetherbe*, 593 F.App'x at 327-28.  The court held the "first category does not provide a basis for relief because Wetherbe has not alleged that Smith was aware of this speech or that it motivated his actions." *Id*. at 328.  In the present case, Wetherbe also has not alleged how Nail became aware of Wetherbe's views on tenure either.  Wetherbe only states that at a strategic-planning meeting "Dean Nail presented a new organizational chart . . . [that] terminated Dr. Wetherbe's position of Associate Dean for Outreach." (Pl.'s Am. Compl. (doc. 11) 22, ¶ 80.)  Wetherbe further alleges that during faculty meetings, "Dean Nail stated that Associate Deans should have tenure," (*Id*.), and that Nail "without prior warning, justification or explanation followed through with Dr. Smith's threats and stripped Dr. Wetherbe of all his previous leadership roles[.]" (*Id*. at 2.) Later in the complaint, when discussing the loss of the Best Buy grant, Wetherbe states "Dean Nail did this harm to TTU in retaliation against Dr. Wetherbe for his **views** on tenure." (*Id*. at

TRM/mdf

26, ¶ 91)(emphasis added).  Further, Wetherbe alleges that in March 2015 "due to Wetherbe's **position**[5] on tenure, TTU informed Dr. Wetherbe that he will be treated as a 'Professor of Practice' for purposes of assigning and increasing his teaching workload." (*Id.* at 27, ¶ 94)(emphasis added).  However, the Fifth Circuit previously addressed this in Wetherbe's original lawsuit and stated:

> It is not enough for Wetherbe to aver that Smith acted against him because of Wetherbe's views on tenure.  A First Amendment-retaliation claim requires that the defendant retaliated in response to some protected speech. There is no freestanding First Amendment prohibition on taking action against a public employee for his beliefs; such a claim must be made to fit within a particular prohibition, such as retaliation under *Garcetti* or political discrimination under *Branti v. Finkel*, 445 U.S. 507, 100 S. Ct. 1287, 63 L.Ed.2d 574 (1980), and *Rutan v. Rep. Party of Ill.*, 497 U.S. 62, 110 S.Ct. 2729, 111 L. Ed. 2d 52 (1990).

*Wetherbe*, 593 F. App'x at 327.

As for the second category, the Court held that "[t]o the extent that Wetherbe alleges retaliation for his [refusal] of tenure, he fails to state a claim." *Wetherbe*, 593 F. App'x at 327.  "Wetherbe's speech to Smith and other university agents while he was applying for these positions . . . does not provide a ground for a retaliation claim because Wetherbe was not speaking as a private citizen on a matter of public concern." *Id.* at 328.

The Fifth Circuit did not address, however, whether Wetherbe might state a claim for First Amendment retaliation for adverse

---

[5]The Court understands Wetherbe's use of position to mean "a point of view adopted and held to." <u>Merriam-Webster's New Collegiate Dictionary</u> 917 (9th ed. 1991).

employment decisions based on his outside speech on tenure. *Id.* at 328 (stating "Wetherbe does not claim that Smith retaliated against him for those outside speaking activities").  Wetherbe now attempts to make such a claim.  To answer this inquiry, the Court must determine whether Wetherbe, in making speeches or authoring articles against tenure, "spoke as a [private] citizen on a matter of public concern." *Garcetti*, 547 U.S. at 418 (citation omitted).

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48.  As stated in the original lawsuit "[a] First Amendment-retaliation claim requires that the defendant retaliated in response to some protected speech."  *Wetherbe*, 593 F. App'x at 328.  "[A]n employee is not speaking as a private citizen on a matter of public concern when the speech aspect of the conduct is only incidental to his performance of his job duties." *Id*. at 327 (citing *Commc'ns Workers of Am. v. Ector Cty. Hosp. Dist.*, 467 F.3d 427 (5th Cir. 2006)).  Likewise, "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." *Wetherbe*, 593 F. App'x at 327 (quoting *Garcetti*, 547 U.S. at 421-22). "A government employee cannot claim the protection of the First Amendment to set his own job conditions." *Id*. Further, as noted in Wetherbe's previous lawsuit, "there is no freestanding First Amendment

prohibition on taking action against a public employee for his beliefs." *Id*.

The Court commends Wetherbe for taking a stand for his beliefs on tenure, but under the extant circumstances his beliefs are not constitutionally protected.  Essentially, as Defendants point out, Wetherbe argues that because of his increased publications on limiting tenure after the filing of his first lawsuit, his views on tenure are now a public concern.  This argument misconstrues, however, the rationale behind the decisions protecting employee speech.  These decisions had nothing to do with the amount of discussion on a topic or the availability of published articles written by or about the employee on the topic.  Instead, the decisions reduced the restraints on public-employee speech in areas that concern the public at large, such as racial discrimination, political speech, and the like. *See*, *e.g.*, *Charles v. Grief*, 522 F.3d 508 (5th Cir. 2008)(noting that a state-lottery-commission employee who sent an email to high-ranking commission officials raising concerns about racial discrimination and retaliation against minority employees was acting as a private citizen on a matter of public concern); *Rankin v. McPherson*, 483 U.S. 378 (holding that a public employee's speech which expressed approval of a presidential-assassination attempt was a matter of public concern);[6] *Konits v. Valley Stream Cent. High Sch. Dist.*, 394 F.3d

---

[6]*See also Rankin*, 483 U.S. at 398 (Scalia, J., dissenting)("The Court ... distort[s] the concept of 'public concern.' It does not explain how a statement expressing approval of a serious and violent crime--assassination of the

121, 125 (2d Cir. 2005)("Gender discrimination in employment is without doubt a matter of public concern."); *compare with City of San Diego, Cal. v. Roe*, 543 U.S. 77, 84-85 (2004)(holding that outside speech detrimental to the missions and functions of the employer was not of public concern).  Tenure is a benefit that owes its existence to, and is generally found only in the context of, government employment and, therefore, is not a matter of public concern. *See Garcetti*, 547 U.S. at 421-22. Wetherbe's individual decision not to accept this benefit and to speak out against it is admirable.  But, it is not this Court's place to determine how a university should make employment decisions when a constitutional right has not been violated. *See Connick*, 461 U.S. at 143, ("Government offices could not function if every employment decision became a constitutional matter.").  As such, Wetherbe's speech on tenure is not a matter of

---

President--can possibly fall within that category. It simply rehearses the 'context' of McPherson's statement, which as we have already seen is irrelevant here, and then concludes that because of that context, and because the statement 'came on the heels of a news bulletin regarding what is certainly a matter of heightened public attention: an attempt on the life of the President,' the statement 'plainly dealt with a matter of public concern.' Ante, at 2897. I cannot respond to this progression of reasoning except to say I do not understand it. Surely the Court does not mean to adopt the reasoning of the court below, which was that McPherson's statement was 'addressed to a matter of public concern' within the meaning of Connick because the public would obviously be 'concerned' about the assassination of the President. That is obviously untenable: The public would be 'concerned' about a statement threatening to blow up the local federal building or demanding a $1 million extortion payment, yet that kind of 'public concern' does not entitle such a statement to any First Amendment protection at all."). Similarly, Wetherbe argues that his published articles on the internet concerning his views on tenure somehow transform his speech on tenure into a public concern. Following Justice Scalia's logic, Wetherbe's speech on tenure does not become a public concern just because the public may find Wetherbe's speech "concerning" or because someone may quickly search the internet and read his articles about tenure. Likewise, under the majority's reasoning, tenure is not a public concern.

public concern.

Finally, Wetherbe alleges that he has been retaliated against in violation of the First Amendment for filing his original lawsuit concerning his speech on tenure.  Wetherbe alleges the filing of the first lawsuit is protected under the Speech Clause and the Petition Clause of the First Amendment.  The framework, as applied to either Clause, hinges on whether the speech or petition is a matter of public concern.  *See Borough of Duryea v. Guarnieri*, 131 S.Ct. 2488, 2500 (2011).  "If a public employee petitions as an employee on a matter of purely private concern, the employee's First Amendment interest must give way, as it does in speech cases." *Id*. Conversely, when a public employee petitions as a citizen on a matter of public concern, the employee's First Amendment interest must be balanced against the countervailing interest of the government in the effective and efficient management of its internal affairs." *Id*. (citing *Pickering*, 391 U.S. at 568).

To support his position that his original lawsuit involved a matter of public concern, Wetherbe cites *Oscar Renda Contracting, Inc. v. City of Lubbock, Texas*, 463 F.3d 378 (2006).  However, *Oscar Renda* is distinguishable from the present case.  There, the City of Lubbock argued that what "might be a matter of public concern in El Paso . . . would be of little interest to the residents of the Lubbock community." *Id*. at 382. The district court agreed, concluding that the contractor's first lawsuit against the El Paso Water District

for First Amendment retaliation was not a matter of public concern "because the suit had nothing to do with a public issue in Lubbock and thus did not address a matter of public concern *to Lubbock*—'*the relevant community*.'" *Id*. at 382 (emphasis in original).  The Fifth Circuit disagreed, having "found no cases expressly discussing whether the speech at issue must be a matter of public concern in the community where the retaliation and plaintiff's damages occur." *Id*. at 383.  The Court noted "[i]f the petition alleged only that Renda filed a lawsuit we would agree with the City ... [because] an employee's suit against her employer is not considered per se a matter of public concern." *Id*. at 383.  "If the lawsuit is only a matter of personal interest to the employee, it is not considered a matter of public concern." *Id*.(citations omitted).  But, the contractor's suit against the El Paso Water District sought to "redress violations of federally protected rights," and this was enough "to put the City on notice . . . that . . . [the] suit involved more than Renda's personal interests and implicated matters of public concern." *Id*.

In Wetherbe's original lawsuit, however, the Fifth Circuit held that "Wetherbe was not speaking as a private citizen on a matter of public concern . . . [and that] this prevents Wetherbe from having a claim for First Amendment retaliation regarding this speech...." *Wetherbe*, 593 F.App'x at 328.  Therefore, because the original lawsuit did not involve a matter of public concern, Wetherbe has failed to state a claim for First Amendment retaliation in response to the

filing of that lawsuit. *See Borough*, 131 S.Ct at 2500.

Consequently, because Wetherbe's speech on tenure is not a matter of public concern, he has failed to state a First Amendment retaliation claim.  As such, he cannot overcome the state's Eleventh Amendment sovereign immunity.  Further, because Wetherbe has failed to allege facts that "make out a violation of a constitutional right," he cannot overcome Nail's qualified-immunity defense. *Wetherbe*, 593 F.App'x at 326 (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

## IV.  Conclusion

Based on the foregoing, the Defendants' second motion to dismiss (doc. 15) is GRANTED.

SIGNED March 31, 2016.

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE