```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF TEXAS
                      LUBBOCK DIVISION
```

```
JAMES C. WETHERBE              §
                               §
VS.                            §   ACTION NO. 5:15-CV-119-Y
                               §
LANCE NAIL, ET AL.             §
```

ORDER DENYING SECOND AMENDED RULE 12(C) MOTION FOR JUDGMENT

Pending before the Court is Defendants' Second Amended Rule 12(c) Motion for Judgment on the Pleadings (doc. 90).[1] After review of the motion, the related briefs, Plaintiff's (third) amended complaint (doc. 86), and the applicable law, the Court concludes that the motion should be and hereby is denied.

I. Facts

Plaintiff James Wetherbe was recruited to be a professor at his alma mater, Texas Tech University ("TTU"), in 2000. He had previously obtained from TTU his M.B.A. in Management Information Systems in 1973 and his Ph.D. in Management Information Systems, Organizational Behavior and Computer Science Management in 1976. Prior to having been recruited back to TTU, Wetherbe had served on the faculty of the Universities of Houston, Minnesota, and Memphis.

Wetherbe contends that while a professor at TTU, he suffered retaliation in violation of his First Amendment rights at the hands

---

[1] Defendants have submitted an appendix with their motion, which includes Nail's deposition. Inasmuch as Defendants' motion is brought under Rule 12(c), the Court has not considered the appendix. *See U.S. v. Renda Marine, Inc.* 667 F.3d 651, 654 (5th Cir. 2012) (noting that in considering a Rule 12(c) motion for judgment on the pleadings, a court "must look only to the pleadings and accept all allegations contained therein as true.") (quotation omitted).

of TTU's former Rawls College of Business dean, Lance Nail. Wetherbe alleges that Nail retaliated against him for being an outspoken critic of tenure. Wetherbe rejected offers of tenure at all of the universities for which he has taught, including TTU. He also authored and had published numerous articles challenging the concept of tenure. Wetherbe contends that Nail was aware of the many articles he had written against tenure and retaliated against Wetherbe because of those articles.

This Court previously granted a motion to dismiss the claims Wetherbe asserted in a prior version of his complaint. The United States Court of Appeals for the Fifth Circuit affirmed in part, concluding that certain of Wetherbe's claims were barred by the doctrines of res judicata, collateral estoppel, or sovereign immunity.[2] But the Fifth Circuit reversed to the extent this Court held that Wetherbe's First Amendment retaliation claim failed because his anti-tenure speech was not a matter of public concern. Wetherbe subsequently was permitted to again amend his complaint, and Defendants now seek judgment on Wetherbe's remaining claims.

### III. Standard of Review

Rule 12(c) states that "[a]fter the pleadings are closed--but

---

[2] Specifically, the Fifth Circuit concluded "that Wetherbe is collaterally estopped from asserting claims that he was retaliated against for his personal anti-tenure views and for rejecting tenure," (Opn. [doc. 40] 8), that he had waived "any arguments in opposition to the application of res judicata to claims predicated on events that occurred before the commencement of the previous action on June 17, 2013," (*id.* at 8-9), and that his claims against TTU "are barred by Eleventh Amendment sovereign immunity," (*id.* at 9).

early enough not to delay trial--a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." *Johnson v. Johnson*, 385 F.3d 503, 528 (5th Cir. 2004) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002)). A Rule 12(c) motion for judgment on the pleadings is essentially a Rule 12(b)(6) motion made after the pleadings close. *See* 2 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 12.38 at 12-136 (3d ed. 2017). "Thus, the 'inquiry focuses on the allegations in the pleadings' and not on whether the 'plaintiff actually has sufficient evidence to succeed on the merits.'" *Ackerson v. Bean Dredging, LLC,* 589 F.3d 196, 209 (5th Cir. 2009) (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 782 (5th Cir. 2007)).

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted." This rule must, however, be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court. Rule 8(a) calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (holding Rule 8(a)'s simplified pleading standard applies to most civil actions). As a result, "[a] motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982), *cert. denied*,

459 U.S. 1105 (1983) (quoting Wright & Miller, *Federal Practice and Procedure* § 1357 (1969)).  The Court must accept as true all well pleaded, non-conclusory allegations in the complaint and liberally construe the complaint in favor of the plaintiff.  *Kaiser Aluminum*, 677 F.2d at 1050.

The plaintiff must, however, plead specific facts, not mere conclusory allegations, to avoid dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  Indeed, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and his "factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 & 1974 (2007).  The Court need not credit bare conclusory allegations or "a formulaic recitation of the elements of a cause of action."  *Id.* at 1955.  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liabile for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

### III.  Analysis

A.  Adverse Employment Action

To adequately plead a claim for retaliation based on the exercise of free speech, a public employee "must establish that: (1) he suffered an adverse employment decision; (2) his speech involved a matter of public concern; (3) his interest in speaking outweighed the government defendant's interest in promoting efficiency; and (4)

the protected speech motivated the defendant's conduct." *Hurst v. Lee Cty., Miss*, 764 F.3d 480, 484 (5th Cir. 2014). Defendants' motion initially seeks judgment on Wetherbe's retaliation claim on the grounds that he has not alleged that he suffered an adverse employment action.[3]

An adverse employment action is "a judicially-coined term referring to an employment decision that affects the terms and conditions of employment." *Thompson v. City of Waco,* 764 F.3d 500, 503 (5th Cir. 2014).  "The broadest definition of an adverse employment action includes hires, refusals to hire, discharges, promotions, refusals to promote, demotions, compensation decisions, and formal reprimands." *Mylett v. City of Corpus Christi*, 97 F. App'x

---

[3] Wetherbe contends that the Court already determined in its prior order of dismissal that he had sufficiently alleged he suffered an adverse employment action and that, as a result of the law-of-the-case doctrine, Defendants cannot revisit that issue.  (Wetherbe's Resp. (doc. 93) 7.)  The Court's prior order of dismissal noted that "[t]aken as true, Wetherbe's allegations sufficiently posit that he suffered an adverse employment action."  (Mem. Op. and Order (doc. 32) 12.)  But that determination was made on the basis of a pleading that has now been amended.  *See Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042-43 (9th Cir. 2018) (concluding that district court erred by concluding that, because it had dismissed the plaintiff's original complaint, albeit without prejudice, it was precluded by the law-of-the-case doctrine from reviewing an amended complaint that included different factual allegations than those alleged in the original complaint).  And in any event, the law-of-the-case doctrine "operates to preclude a reexamination of issues of law decided on appeal, explicitly or by necessary implication, either by the district court on remand or by the appellate court in a subsequent appeal." *Chapman v. Nat'l Aeronautics and Space Admin.*, 736 F.2d 238, 241 (5th Cir. 1984).  On appeal of this Court's prior order, the Fifth Circuit did not address whether Wetherbe had sufficiently alleged he suffered an adverse employment action.  And the doctrine "does not operate to prevent a district court from reconsidering prior rulings." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010).

473, 475 (5th Cir. 2004).  "'[D]ecisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures,' while extremely important to the person who dedicated his or her life to teaching, do not rise to the level of constitutional deprivation." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997)(quoting *Dorsett v. Bd. of Trs. for State Colls. & Univs.*, 940 F.2d 121, 123 (5th Cir. 1991)).  Nevertheless, "[a] transfer may be considered the functional equivalent of a demotion and qualify as an adverse employment action if the new position is 'objectively worse.'"  *Id.*; *see also Thompson*, 764 F.3d at 503 ("[T]o be the equivalent to a demotion, a transfer need not result in a decrease in pay, title or grade; it can be a demotion if the new position proves objectively worse--such as being less prestigious or less interesting or providing less room for advancement.").  And, a "'campaign of retaliatory harassment' is actionable [but] only where it constitutes 'a constructive adverse employment action." *Mylett*, 97 F. App'x at 476 (quoting *Colson v. Grohman*, 174 F.3d 498, 514 (5th Cir. 1999).

Wetherbe's latest amended complaint claims that the following alleged incidents constitute adverse employment actions:

(1)  Nail changed Wetherbe's fall 2013 semester schedule at the last minute during a meeting on August 5, 2013, between Nail, Wetherbe, and Wetherbe's area coordinator, Dr. Glenn Browne, which required Wetherbe to cancel his family vacation plans to prepare. (Pl.'s Am. Compl. (doc. 86) 17, ¶ 38.) Wetherbe alleges that faculty normally have at least five months to prepare to teach their classes.

ORDER RULE 12(C) MOTION FOR JUDGMENT - Page 6
TRM/chr

(*Id.* at 15, ¶ 34; 23, ¶ 56(5).)  During the August 5 meeting, Nail removed Wetherbe from a top-rated MBA communications class, asserting that Wetherbe was not qualified to teach it and his doing so would jeopardize accreditation, despite the fact that he had taught the course over forty times during a ten-year period at TTU and had also taught it at each of the universities for which he previously worked. (*Id.* at 15-17, ¶¶ 35-39.)  Instead, Nail assigned Wetherbe to an introductory freshman/sophomore class that doctoral students normally teach.  (*Id.* at 17, ¶39; 23, ¶ 56(5).)  Importantly for purposes of whether this rose to the level of an adverse employment action, Wetherbe alleges that his removal from this MBA course "came with a loss of pay."  (*Id.* at 23, ¶ 56(4).)

(2)  Wetherbe also alleges that Nail refused to permit him to lead the development of "an internet-based social media thought leadership platform for entrepreneurs called Entrepreneur & Innovation Exchange, or EIX," that was funded by Best Buy and its founder Dick Schulze, which "adversely affected his income by approximately $50,000."  (*Id.* at 19-20, ¶¶ 45-46; 23, ¶ 56(2),(3).)

(3) Nail removed Wetherbe from the Stevenson Chaired Professor-ship over protests by Bobby Stevenson, the donor of the chair, thus "cost[ing] Wetherbe approximately $90,000 per year in funding to support research and philanthropy."  (*Id.* at 21, ¶§ 49-50; 24, ¶ 56(7).)  Wetherbe was allegedly removed as a result of Nail's "new uniform policy limiting the amount of time professors could hold endowed professorships to 15 years," but "this new policy was not implemented for any other faculty."  (*Id.* at 21, ¶50.)

(4) Nail informed Wetherbe on March 5, 2015, that he would henceforth be treated as a "professor of practice" rather than a "full research professor without tenure" for purposes of assigning his teaching load, which increased that "workload by fifty percent" and "was a demotion." (*Id.* at 22, ¶¶ 52; 23-24, ¶ 56(1), (6).)

The Court agrees with Wetherbe that, as alleged, these incidents rise to the level of adverse employment actions. Wetherbe alleges that he was demoted from a full professor to a professor of practice, which drastically increased his teaching workload. He also alleges that he was removed from an endowed chair over the protest of its donor, allegedly in accordance with new policy that was only applied to him, resulting in a decrease in his available funds for research. And he also alleges that he was removed from a long-taught MBA course to teach an introductory course generally taught by graduate students, which resulted in a loss of pay. The Court has little trouble concluding that Wetherbe has adequately alleged that he suffered adverse employment actions. Nail may disagree about what exactly happened, why it happened, or the effect those events had on Wetherbe's pay, status, or even workload, but that is not within the purview of a Rule 12(c) motion challenging Wetherbe's pleading.[4] Wetherbe has adequately alleged the he suffered adverse employment actions in the form of losses of pay and a demotion.

B. Qualified Immunity

Nail also contends that he is entitled to qualified immunity

---

[4] Indeed, most of the cases cited in Defendants' brief involved decisions on or reviews of summary judgments or trials.

from Wetherbe's suit. The doctrine of quality immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests--the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Claims of qualified immunity are evaluated using a two-prong analysis, which requires the plaintiff to show (1) that the official's conduct violated plaintiff's constitutional right and (2) that the constitutional right was clearly established at the time of the violation. *Id.* at 232. Courts may address these prongs in either order. *Id.* at 242.

1. Constitutional Violation

Wetherbe has sufficiently alleged a violation of his constitutional rights. As previously mentioned, to adequately plead a claim for retaliation based on the exercise of free speech, a public employee "must establish that: (1) he suffered an adverse employment decision; (2) his speech involved a matter of public concern; (3) his interest in speaking outweighed the government defendant's interest in promoting efficiency; and (4) the protected speech motivated the defendant's conduct." *Hurst,* 764 F.3d at 484. Defendants' motion only challenges "elements one and four here."

(Defs.' Br. (doc. 91) 17.) The Court has already determined, above, that Wetherbe has sufficiently alleged he suffered an adverse employment action. And Wetherbe clearly alleges that Nail knew about--and that his actions were motivated by--Wetherbe's published articles against tenure.[5] (Pl.'s Am. Compl. (doc. 86) 2, ¶ 2; 4, ¶6; 18, ¶¶ 41-42; 20, ¶ 47; 23, ¶ 55.)

### 2. Clearly Established Law

Under the second prong of the qualified-immunity test, the Court must determine whether Wetherbe has sufficiently alleged facts demonstrating that Nail's conduct "was objectively unreasonable in light of clearly established law at the time of the incident." *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008). This prong also "entails [a] two-part inquiry[:] whether the right was clearly established at the time of the challenged conduct, and, even if it was, whether the individual [d]efendant's conduct was nevertheless objectively reasonable." *Kostic v. Tex. A&M Univ. at Commerce*, 11 F. Supp. 3d 699, 721 (N.D. Tex. 2014)(Lynn, J.)(quotations omitted).

Regarding the first part of this inquiry, the Court finds its decision in *Kostic* instructive:

> The critical question is whether the state of the law at the time gave the official "fair warning" that his or her act was unconstitutional. *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (en banc) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741). The Court "must ask whether the law so

---

[5] Defendants contend that "this Court already made a finding that Wetherbe failed to establish that Nail had any knowledge of his views on tenure prior to or in conjunction with his publication or speeches." (Defs.' Br. (doc. 91) 18 (citing "Doc. No. 32, pgs 13-14").) But any such "finding" related to a prior version of Wetherbe's complaint and not the one currently pending before the Court.

clearly and unambiguously prohibited [the official's] conduct that every reasonable official would understand that what he is doing violates [the law]," and, "[t]o answer that question in the affirmative, [the Court] must be able to point to controlling authority"--or a "robust consensus of persuasive authority"--"that defines the contours of the right in question with a high degree of particularity." *Id.* (internal quotation marks and footnotes omitted). [However, a] "'case directly on point'" is not required. *Id.* at 412 (quoting [*Ashcroft v.*] *al-Kidd*, 131 S. Ct. [2074,] 2083 [2011]). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope*, 536 U.S. at 741.

But a court must ask "not only whether courts have recognized the *existence* of a particular constitutional right, but also . . . whether that right has been defined with sufficient clarity to enable a reasonable official to assess the lawfulness of his conduct." *Morgan*, 659 F.3d at 372 (quoting *McClendon [v. City of Columbia]*, 305 F.3d [314,] 331 [5th Cir. 2002]). "Under the Fifth Circuit standard, the doctrine of qualified immunity protects government officials from civil damages liability when they reasonably could have believed that their conduct was not barred by law, and immunity is not denied unless existing precedent places the constitutional question *beyond debate*." *Wyatt [v. Fletcher]*, 718 F.3d [496,] 503 [(5th Cir. 2013)]. "This requirement establishes a high bar. When there is no controlling authority specifically prohibiting a defendant's conduct, the law is not clearly established for the purposes of defeating qualified immunity." *Id.*

. . . .

At the time of the alleged violation of Plaintiff's First Amendment rights in 2009 and later, both Supreme Court and Fifth Circuit law clearly proscribed retaliation by a government employer against an employee for engaging in protected speech. *See Davis [v. McKinney]*, 518 F.3d [304,] 317 [(5th Cir. 2008)] (citations omitted); *Petrie [v. City of Grapevine]*, 904 F. Supp. 2d [569,] 589-91 [(N.D. Tex. 2012) (Lynn, J.)]; *see also Haverda [v. Hays Cty.]*, 723 F.3d [586,] 599 [(5th Cir. 2013)] ("[T]here is no doubt that Haverda had a clearly established constitutional right not to be fired for engaging in protected speech."). "More specific to the conduct at issue in this case, the law was clearly established that speech directed to a person outside of the workplace on a matter of public concern only tangentially related to official duties is speech protected by the First Amendment." *Petrie [v. Salame]*, 546 F. App'x [466,] 470 [(5th Cir. 2013)]*, see also Petrie*, 904 F. Supp.

>   2d at 590 ("By the summer of 2009, when the alleged violation occurred, the Supreme Court and Fifth Circuit had explained that speech was not constitutionally protected if made 'pursuant to official duties.' The Fifth Circuit had further defined 'pursuant to official duties' as 'activities undertaken in the course of performing ones job.' And it had clarified that an employee making external communications is typically not speaking 'pursuant to official duties.'" (Citations omitted.)).

*Kostic*, 11 F. Supp. 3d at 721-22.  The events about which Wetherbe complains took place in 2013 and thereafter.  Thus, in light of this Court's decision in *Kostic*, the Court concludes that at the time of the events alleged in Wetherbe's complaint, it was clearly established that a state official could not impose adverse employment actions on a state employee on account of that employee's outside speech on a matter of public concern.[6]

Finally, the Court must determine whether Wetherbe has adequately alleged that Nail's actions were objectively unreasonable in light of that clearly established law.  *See id.* at 723 ("Even if the right

---

[6]Defendants allege that Wetherbe loses on this issue because he "failed to cite to any cases where actions taken by a university Dean in accordance with university policy and administration affecting a faculty member who spoke out against the tenure system was a violation of that faculty member's First Amendment right." (Defs.' Br. (doc. 91) 14.)  Essentially, Defendants contend that if there is not a factually identical case in which the defendant's actions were held to be unconstitutional, they are entitled to immunity.  The Court disagrees.  Defendants are correct that the bar is high, inasmuch as "the clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017).  But Defendants place it out of reach.  Although courts are "not to define clearly established law at a high level of generality, this does not mean that a case directly on point is required." *Morgan*, 659 F.3d at 372; *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ("We do not require a case directly on point").  At the time Nail acted, the law was clearly established, as noted in *Kostic*, that a university dean could not demote or reduce the pay of a professor on account of his having spoken publicly on a matter of public concern.

[were] clearly established at the time of the alleged violation, a defendant [would] still be entitled to qualified immunity if the defendant's conduct was 'objectively reasonable in light of 'clearly established' law at the time of the violation." (quoting *Porter v. Ascension Parish Sch. Bd.*, 393 F.3d 608, 614 (5th Cir. 2004)).  "The reasonableness of an official's actions must be assessed in light of the facts available to him at the time of his action and the law that was clearly established at the time of the alleged illegal acts." *Porter*, 393 F.3d at 614.  But because this is a Rule 12(c) motion, the Court looks only to the facts alleged in Wetherbe's amended complaint.  Wetherbe alleges that Nail demoted him, caused him to suffer reductions in his pay, and essentially engaged in a pattern of harassment against him simply because Nail did not agree with or appreciate Wetherbe's authoring anti-tenure articles.  At the time of his actions, however, any reasonable official in Nail's position should have understood that demoting or reducing Wetherbe's pay on account of his publication of articles expressing anti-tenure views violated Wetherbe's First Amendment rights.[7]  Consequently, the Court

---

[7]Defendants point out that previously, "this Court found that Wetherbe's publications regarding tenure did not qualify as speech on a matter of public concern." (Defs.' Br. (doc. 91) 16.)  Thus, Defendants argue the law on this issue was not clearly established.  Wetherbe has not responded to this contention.  Nevertheless, the Court is not persuaded, at least at this juncture of these proceedings, that its prior error is a sufficient basis upon which to conclude that the law regarding retaliating against a public employee for speaking out on a matter of public concern was not clearly established when  Nail allegedly acted in mid-to-late 2013.  Indeed, almost all of the cases upon which the Fifth Circuit relied in reversing this Court's prior decision on the public-concern issue were decided well before the year of Nail's alleged actions.

concludes that Wetherbe has sufficiently alleged that Nail's actions were objectively unreasonable in light of clearly established law.

## IV.  Conclusion

For the foregoing reasons, the Court concludes that Wetherbe has adequately pled that he suffered adverse employment actions by way of Nail's actions, and that Wetherbe's allegations are sufficient to overcome Nail's qualified immunity defense. Consequently, Nail's Motion for Judgment on the Pleadings (doc. 90) is DENIED.

SIGNED December 3, 2019.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE